**Robin DORSEY, et al., Plaintiffs,**

v.

**Arnold TOMPKINS, Defendant.**

No. C2–95–740.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 29, 1996.

Gary Smith, Southeastern Ohio Legal Services, New Philadelphia, Ohio, James M. Daniels, Southeastern Ohio Legal Services, Chillicothe, Ohio, William L. Archer, Jr., Ohio State Legal Services Association, Columbus, Ohio, for plaintiff.

Betty D. Montgomery, Attorney General, Alan P. Schwepe, Assistant Attorney General, Health & Human Services Section, Columbus, Ohio, for defendant.

### OPINION AND ORDER

GRAHAM, District Judge.

This is an action for declaratory and injunctive relief filed by plaintiffs Robin Dorsey and Randy Webb, who are recipients of Aid to Families with Dependent Children ("AFDC") benefits, against defendant Arnold Tompkins in his official capacity as the Director of the Ohio Department of Human Services ("ODHS"). ODHS administers all federally-funded public assistance programs in Ohio, and county departments of human services ("CDHS's") operate these programs under regulations and directives issued by ODHS.

Plaintiffs assert that as AFDC recipients, they are obligated to participate in the Job Opportunities and Basic Skills ("JOBS") training program. As the result of their participation in this program, plaintiffs are eligible for "payment or reimbursement for such transportation and other work-related expenses ... as the State determines are necessary to enable such individuals to participate in such program." 42 U.S.C. § 602(g)(2). *See also,* 45 C.F.R. § 255.2(c)(1); Ohio Admin.Code § 5101:1–47–20. Plaintiffs allege that in calculating the amount of transportation benefits for which they are eligible, their respective CDHS's erroneously considered student financial assistance payments in the form of grants and loans received by plaintiffs in violation of 20 U.S.C. § 1087uu. That section provides that student financial assistance received pursuant to Chapter 28, Subchapter IV of Title 20 of the United States Code "shall not be taken into account in determining the need or eligibility of any person for benefits or assistance, or the amount of such benefits or assistance, under any Federal, State, or local program financed in whole or in part with Federal funds."

Plaintiffs allege that defendant's policies and regulations permit consideration of student loans and grants in violation of § 1087uu. Although the benefits involved in plaintiffs' own cases are transportation allowances, plaintiffs also seek to bring this action on behalf of a class comprised of recipients of any federally funded benefits administered by ODHS who, on or after July of 1993, have been adversely affected by defendant's alleged policy of noncompliance with § 1087uu. Plaintiffs' motion for class certification is currently pending before the court. Plaintiffs request this court to enter an order declaring that defendant's policies and regulations vio-

late § 1087uu. Plaintiffs also seek injunctive relief ordering defendant to comply with § 1087uu and to notify all recipients of any federally funded benefits whose benefits have been erroneously calculated in violation of § 1087uu of the administrative procedures available for obtaining a redetermination of benefits. Plaintiffs seek relief pursuant to 42 U.S.C. § 1983, alleging that they have been deprived of rights granted to them under § 1087uu. Plaintiffs further assert that they are entitled to maintain a private cause of action against defendant under § 1087uu.

■ Defendant has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, and under Fed. R.Civ.P. 12(b)(7) for failure to join an indispensable party. A complaint may not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss will be granted under Rule 12(b)(6) if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978).

Defendant first argues that the complaint should be dismissed because ODHS regulations demonstrate that the ODHS policy in regard to the transportation allowance is the same as that of the Secretary of Health and Human Services ("Secretary" and "HHS"). Defendant has submitted a copy of Action Transmittal No. CC–ACF–AT–93–3 ("AT–93–3"), dated July 16, 1993, which was issued to state Title IV–A agencies by the Administration for Children and Families, an agency of HHS. This transmittal discusses the Administration's interpretation of § 1087uu and the obligation of state agencies under that

section. *See* Motion to Dismiss, Exhibit A. This transmittal instructs state agencies that student loans may not be considered in calculating other benefits, and that student grants may be considered only to the extent that funds are retained by the educational institution or voluntarily applied by the AFDC recipient toward payment for services or expenses which would be duplicated by state agency benefits. Exhibit A, pp. 3–4.

Defendant points to ODHS regulations contained in Ohio Admin.Code § 5101:1–47–20 and claims that these provisions establish that the policy of ODHS in regard to the consideration of student loans or grants in calculating the transportation allowance is consistent with HHS's interpretation of § 1087uu. Ohio Admin.Code § 5105:1–47–20(A) provides that JOBS program participants "shall not be required to use their grants or other personal resources to cover expenses associated with participation." Section 5101:1–47–20(H) allows a participant to receive the participant expense allowance, including a transportation allowance, so long as there is no duplication of payment.

■ However, plaintiffs allege in their complaint that the policy actually applied in their case did not comply with § 1087uu. In fact, defendant has conceded that the reduction of plaintiffs' transportation allowance was improper. The fact that an administrative agency has implemented certain regulations does not ipso facto mean that the agency has a policy of adhering to those regulations. Plaintiffs allege that ODHS and its CDHS's follow a policy of considering grants and loans in violation of § 1087uu. The issue of whether ODHS actually implements and enforces a policy consistent with § 1087uu involves factual questions which cannot be resolved by a motion to dismiss. Defendant's motion to dismiss on this ground is not well taken.

■ Defendant argues that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join an indispensable party. The question of whether a complaint must be dismissed for failure to join an indispensable party involves a three-step process. *Keweenaw Bay Indian Community v. Mich-*

igan, 11 F.3d 1341, 1345 (6th Cir.1993). Under Fed.R.Civ.P. 19(a), a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction shall be joined if: 1) in the person's absence complete relief cannot be accorded among the existing parties, or 2) the person claims an interest in the subject matter of the action and disposition of the action in his absence may impair or impede his ability to protect that interest or create a substantial risk of double, multiple or inconsistent obligations. If the person falls within either of these categories, the court must then consider the second issue of whether personal jurisdiction is present. *Keweenaw Bay,* 11 F.3d at 1345. If personal jurisdiction is present, the party must be joined. *Id.* If personal jurisdiction is not present, the court must take the third step of analyzing the factors in Fed.R.Civ.P. 19(b) to determine whether the action may proceed without that party or whether the action must be dismissed. *Id.* at 1345–1346.

Defendant contends that the Secretary of HHS is an indispensable party because in order to grant the relief requested by plaintiffs, this court would have to hold that the Secretary's interpretation of § 1087uu contained in AT–93–3 is erroneous, thus impacting upon HHS's procedures. Defendant asserts that HHS should be afforded the opportunity to defend its interpretation. Plaintiffs respond that they have no quarrel with AT–93–3, and that their complaint involves ODHS's failure to comply with AT–93–3.

Defendant relies on *Boles v. Greeneville Housing Authority,* 468 F.2d 476 (6th Cir. 1972). In *Boles,* the court held that the Department of Housing and Urban Development was an indispensable party in a case which indirectly attacked a HUD administrative decision approving a plan for an urban renewal project. Defendant also cites *McCowen v. Jamieson,* 724 F.2d 1421 (9th Cir.1984), where the court determined that the Department of Agriculture was an indispensable party because the judgment rested on the determination that the Department erred in a decision concerning the issuance of replacement food stamp coupons by a state agency. In *Ford v. Krechbaum,* Slip Op., Case No. C–2–92–352 (S.D.Ohio 1992), another case noted by defendant, the court held that the Department of Agriculture was a necessary party in an action against the ODHS challenging plaintiffs' disqualification for receiving food stamps where the USDA had ratified the position of the ODHS in the matter. The court also notes *Jones v. Board of Educ. Cleveland City School Dist.,* 474 F.2d 1232 (6th Cir.1973), in which the court held that the Department of Agriculture was a necessary party in an action to compel the Board to establish school lunch programs where officials of the Department testified in depositions that they agreed with how the Board was handling the school lunch program, and where the Department would be obligated to provide funding in the event that plaintiffs prevailed.

The above decisions involve an attack on an order or decision of the federal agency, or some degree of involvement on the part of the federal agency which made an appearance in the action necessary. This case, on the other hand, involves solely a dispute with the policies of ODHS, not with any opinion of or action taken by HHS. Plaintiffs allege that ODHS is violating a federal statute, not that HHS is violating any law or regulation. *See, M.B. Guran Company, Inc. v. City of Akron,* 546 F.2d 201, 204 n. 3 (6th Cir.1976) (no need to determine whether HUD was an indispensable party where plaintiff alleged that defendant was violating a HUD rule, not that HUD was violating its own rule).

Courts are called upon daily to interpret federal laws and regulations. An agency does not become an indispensable party merely because a memorandum of its interpretation of a federal statute becomes an issue in a case. The fact that an agency may be able to lend its expertise to the interpretation of laws or regulations does not mandate its joinder as an indispensable party. *See, Dyke v. Gulf Oil Corp.,* 601 F.2d 557 (Emer.Ct.App.1979). The court, *Id.* at 568, also noted that if an agency is interested in defending its interpretation of a law or regulation, it can apply to intervene under Fed. R.Civ.P. 24(b), which provides for permissive intervention by a governmental agency in

actions involving a statute, regulation or order administered by that agency.

■ It appears from the briefs of the parties that there is no serious dispute concerning the validity of the Secretary's interpretation of § 1087uu. It has not been demonstrated that the Secretary has an interest in the subject matter of this action such that the disposition of this action may impair or impede the Secretary's ability to protect that interest. Defendant's motion to dismiss for failure to join an indispensable party is not well taken.

Defendant next argues that plaintiff Dorsey's claims must be dismissed because they are barred by the doctrine of collateral estoppel. Plaintiffs' motion to file a supplemental brief on this issue is granted. Defendant notes the fact that plaintiff Dorsey filed an administrative complaint contesting the decision of the Pike CDHS reducing her transportation allowance. On February 13, 1995, a state hearing officer issued findings of fact and conclusions of policy and recommended that the appeal be overruled. Motion to Dismiss, Exhibit C. Plaintiff Dorsey filed an administrative appeal with ODHS. In a decision issued on March 15, 1995, the hearing panel disagreed with plaintiff's interpretation of § 1087uu and affirmed the decision of the hearing officer. Motion to Dismiss, Exhibit C. Plaintiff Dorsey did not pursue an appeal to the court of common pleas as authorized by Ohio Revised Code § 5101.35. Defendant contends that plaintiff Dorsey is barred from relitigating the issues decided in the administrative proceedings.

■ Federal courts must look to state law in determining what preclusive effect should be given a prior state court decision. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (state rules of collateral estoppel apply to § 1983 suits).

■ Ohio courts recognize the doctrine of collateral estoppel, the "issue preclusion" branch of res judicata. *Whitehead v. General Telephone Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969). The doctrine of collateral estoppel precludes the relitigation between the same parties or their privies of legal or factual issues that were actually and necessarily litigated and determined in a prior action even though the subsequent action is a different cause of action. *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 69 Ohio St.2d 241, 431 N.E.2d 672 (1982). The party invoking collateral estoppel must show that the same issue was litigated and directly determined in the prior action, and that the parties had the opportunity and the incentive to fully and vigorously litigate the issue in the first action. *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (1983).

■ Collateral estoppel may be applicable to prior administrative proceedings where the factual disputes resolved were clearly relevant to issues properly before the administrative board, and where the parties had an ample opportunity to litigate the issues involved in the administrative proceeding. *Superior's Brand Meats, Inc. v. Lindley*, 62 Ohio St.2d 133, 403 N.E.2d 996 (1980).

■ Defendant has not shown that this case involves the same issues and parties present in the administrative proceedings. The issue raised before the hearing officer was whether the Pike CDHS erred in the calculation of plaintiff Dorsey's transportation benefits. An additional issue is present in this case, that being whether defendant as Director of ODHS has customarily and generally implemented a policy which conflicts with § 1087uu. The parties at the administrative level were plaintiff Dorsey and the Pike CDHS. The parties here are plaintiff Dorsey and defendant in his capacity as Director of ODHS. The initial administrative hearing was a hearing granted by ODHS pursuant to Ohio Revised Code § 5101.35(B). The subsequent appeal was made to the defendant and was decided by defendant or his designee pursuant to Ohio Revised Code § 5101.35(C). Defendant was the agency decisionmaker, not a party, in the agency proceedings. Defendant has not shown that the claims of plaintiff Dorsey are barred by collateral estoppel, and his motion to dismiss on that basis is not well taken.

Defendant argues that plaintiffs' second claim requesting relief under 20 U.S.C. § 1087uu should be dismissed because neither that section nor 42 U.S.C. § 602(g)(2) grants plaintiffs a private right of action. No private right of action is expressly provided for in either of those sections. Therefore, the issue is whether a private cause of action is implied.[1]

 Congressional intent is of primary importance in determining whether there is an implied right of action under a federal statute. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981). In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), the Supreme Court set forth a four-part test to determine whether a private remedy is implicit in a federal statute even though Congress did not expressly provide for one:

> First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? (Internal quotation marks omitted; emphasis in original).

The burden is on the plaintiffs to demonstrate that Congress intended to make a private remedy available to enforce

§ 1087uu. *Suter v. Artist M.,* 503 U.S. 347, 363–364, 112 S.Ct. 1360, 1370–71, 118 L.Ed.2d 1 (1992).

The present case involves the relationship between two statutory provisions, 42 U.S.C. § 602(g)(2) and 20 U.S.C. § 1087uu. Section 602(g)(2) is part of the AFDC program authorized under Title IV–A of the Social Security Act. AFDC is a cooperative federal-state program which provides various forms of financial assistance to needy families with minor children. *See* 42 U.S.C. § 601 *et seq.* These provisions were enacted for the purpose of encouraging the care of dependent children in their own homes by enabling each participating state, so far as it is practical in light of conditions in the state, to furnish financial assistance and rehabilitation and other services to needy dependent children and the parents or relatives with whom they are living. 42 U.S.C. § 601.

 Participating states must comply with the requirements of the Social Security Act and with regulations issued by the Secretary of HHS. *Maynard v. Williams,* 72 F.3d 848 (11th Cir.1996). One such requirement is the establishment of a JOBS program in accordance with 42 U.S.C. § 681 *et seq.* Section 602(g)(2) requires participating states to provide payment or reimbursement for transportation expenses to JOBS program participants in amounts which the state determines are necessary to enable such individuals to participate in the program. *See also,* 45 C.F.R. § 255.2(c)(1). These necessary costs of transportation are eligible for federal reimbursement. 42 U.S.C. § 602(a)(19)(F)(iv).

Section 1087uu is included within Subchapter IV of Title 20, 20 U.S.C. § 1070 *et seq.,* which authorizes and governs the use of fed-

---

1. As noted previously, plaintiffs also seek to represent a class consisting of all persons who received student financial assistance under Title IV of the Higher Education Act and similar Bureau of Indian Affairs programs, who received reduced benefits in violation of § 1087uu through any benefit program administered by the defendant which receives federal funding. Defendant, as director of ODHS, administers all federally funded public assistance programs in Ohio. Analysis of the language and terms of every statutory provision authorizing federal funding of

benefits administered by defendant to which § 1087uu could be applied to determine whether a private right of action can be inferred from those provisions would be a task of monumental proportions. The cases of the individual plaintiffs involve an alleged violation of § 1087uu in calculating their transportation benefits under § 602(g)(2). This court will therefore confine its discussion to whether a private right of action may be inferred under § 1087uu or under § 1087uu as applied to transportation allowances under § 602(g)(2).

eral funds for educational grants and student loans. Section 1087uu provides that any student loans or grants awarded under Subchapter IV shall not be taken into account in determining the recipients's eligibility or need for benefits or the amount of benefits "under any Federal, State, or local program financed in whole or in part with Federal Funds." According to House Report No. 102–447, 102d Cong., 2d. Sess. 72, *reprinted in* 1992 U.S.Code Cong.Admin.News 334, 405, the purpose of this provision was "to protect students who are receiving Federal or Federally-subsidized assistance to support themselves and/or their families," to "encourage these students to continue their education so that they can become self sufficient," and to "remove any obstacles [posed by a reduction in other forms of assistance] that would discourage their independence." Section 1087uu itself does not grant any benefits, but rather instructs state and federal agencies how other benefits should be calculated.

■■■ Plaintiffs, as recipients of student loans and grants and other forms of financial assistance under the AFDC and JOBS programs, fall within the category of persons the prohibition in § 1087uu was intended to benefit. The primary object of § 601, *et seq.* is to provide funding to the states so that the states can administer benefits programs. Plaintiffs, as recipients of benefits, are at least indirect beneficiaries of this legislation. However, to imply a private right of action, a statute must do more than confer benefits; the court must also find that Congress intended to confer federal rights upon those beneficiaries. *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779–80, 68 L.Ed.2d 101 (1981); *AFSCME Local 506 v. Private Industry Council of Trumbull County,* 942 F.2d 376, 379 (6th Cir.1991).

One means of determining whether Congress intended to confer federal rights is to examine the language of the statute itself. Sections 602(a) and 602(g)(2) contain no express language suggesting that Congress intended to confer federally enforceable rights upon individual beneficiaries. A lack of intent to confer rights is also indicated by the fact that § 602(g)(2) does not mandate the

payment of a specified amount of benefits, and instead gives the state agencies the discretion to determine the amount of transportation benefits which are necessary.

■■■ Likewise, the text of § 1087uu has no language which suggests an intent to confer federal rights. Section 1087uu is worded as a broad prohibition directed toward any agency, state or federal, which determines need, eligibility, or amount of benefits "under any Federal, State, or local program financed in whole or in part with Federal funds." The Supreme Court has held that where the language of a statute constitutes a general prohibition or command to a federal agency or is phrased as a directive to federal agencies engaged in the disbursement of public funds, such language provides no support for the implication of a private remedy. *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 772–773, 101 S.Ct. 1451, 1462–63, 67 L.Ed.2d 662 (1981) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 690–692, 693 n. 14, 99 S.Ct. 1946, 1954–55, 1955 n. 14, 60 L.Ed.2d 560 (1979)). The fact that plaintiffs may indirectly benefit from this statutory directive does not result in the creation of a private remedy. *Abate v. Southern Pacific Transportation Co.,* 928 F.2d 167, 169 (5th Cir.1991).

The second branch of the *Cort v. Ash* test is whether the legislative history of the statute reveals any intent on the part of Congress to create a private remedy. The legislative history relevant to § 1087uu, quoted above, reveals the purpose behind that provision, but contains no suggestion that Congress meant to provide a federal remedy to enforce that provision. There is likewise no language in the legislative history of § 602(g)(2) which suggests an intent on the part of Congress to authorize a private right of action. The report on the enactment of the current form of § 602(g)(2) simply notes the differences between the current and proposed versions of the law and indicates that under the proposed version, "State agencies must provide payment or reimbursement for transportation and other work-related supportive services determined by the State to be necessary for an individual's participation in the JOBS program." Senate Report No.

100–377, 100th Cong., 2d Sess. 36, *reprinted in* U.S.Code Cong.Admin.News 2776, 2813. The legislative history is silent as to whether § 602(g)(2) may be enforced by individual recipients.

In authorizing the establishment of AFDC programs, Congress left the administration of these programs primarily to the states. *See* 42 U.S.C. § 602(a). The Secretary of HHS does oversee the administration of the benefits programs to some extent. This oversight function involves matters such as the initial review and approval of the plans and automated data processing systems proposed by the states, 42 U.S.C. § 602(b), (e); review of periodic reports which states are required to file under the Social Security Act, 42 U.S.C. § 603; and the establishment by the Secretary of a quality control system to review the sample of cases used by the states to determine the level of erroneous payments for each fiscal year and the calculation of disallowances, 42 U.S.C. § 608.

The Secretary evaluates adherence to federal law through review of procedures and policies of state agencies and of selected case records and aspects of agency operations. 45 C.F.R. § 201.10. Matters such as determining eligibility for benefits and the calculation of benefits provided to each recipient are left to the state administrative process. Where a provision of a state plan is inconsistent with federal law or regulations and the Secretary notifies the state of the inconsistency, the federal law and regulations control. 42 U.S.C. § 608(c)(2). There are no federal administrative remedies provided to individuals to contest the amount of benefits awarded under § 602. However, the Secretary of HHS is authorized to suspend payments to the state in the event that the state fails to administer the plan in compliance with § 602(a). 42 U.S.C. § 604(a)(2).

Providing a remedial scheme for individual beneficiaries is exclusively the responsibility of the states. Under 42 U.S.C. § 602(a)(4) and 45 C.F.R. § 205.10, states are required to provide the opportunity for a hearing before the state agency to contest the denial or reduction of benefits. The hearing rights apply to complaints concerning the reduction of transportation allowances. 45 C.F.R. § 255.2(h).

The State of Ohio, pursuant to the dictates of 42 U.S.C. § 602(a)(4), has established a scheme for administrative and court review of a recipient's complaint. *See* Ohio Revised Code § 5101.35; Ohio Admin.Code § 5101:6–1, *et seq.* The initial state hearing is presided over by an impartial ODHS hearing officer. At the hearing, the AFDC recipient may be accompanied by a representative or an attorney, may present evidence, call witnesses and cross-examine adverse witnesses, and may make legal arguments. Ohio Admin.Code § 5101:6–6–02. Although the hearing officer's conclusions of policy are usually based solely on published ODHS regulations, reference to the Ohio Revised Code and other statutory sources is permitted where the ODHS regulations are silent on the issue. Ohio Admin.Code § 5101:6–7–01(C)(2).

An administrative appeal from the state hearing decision is permitted under Ohio Admin.Code § 5101:6–8–01, including appeals asserting that the decision rests on an incorrect application of law or rule. An appeal of the final agency decision to the court of common pleas is provided by Ohio Revised Code § 5101.35, § 119.12 and Chapter 2506, and by Ohio Admin.Code § 5101:6–9–01. The court of common pleas is empowered to find that the agency decision is unconstitutional, illegal, arbitrary, or unreasonable or unsupported by the preponderance of the evidence. Ohio Revised Code § 2506.04. An appeal of the decision of the common pleas court to the court of appeals is permitted under Ohio Revised Code § 2506.04, and further discretionary review of an adverse decision of the court of appeals may be sought in the Ohio Supreme Court under Article IV, § 2(B) of the Ohio Constitution and the Rules of Practice of the Ohio Supreme Court.

There are no administrative provisions expressly relating to the enforcement of § 1087uu. That section simply contains a directive as to how the benefits provided under § 602(g)(2) should be calculated. Therefore, the administrative procedures relevant to § 602(g)(2) apply as well to § 1087uu. *See Cabinet for Human Resources, Commonwealth of Kentucky v.*

*Northern Kentucky Welfare Rights Ass'n*, 954 F.2d 1179 (6th Cir.1992) (statute providing that energy subsidy benefits would not affect other benefits received by household triggered only by operation of the statute providing for the other benefits; recipient's ability to enforce energy benefits provision limited to the mechanisms for enforcing the distribution of the other benefits affected). The statutory scheme suggests that Congress intended that any failure to comply with § 1087uu be addressed in the state administrative forum available for challenging the denial of the affected benefits.

Congress, through the Social Security Act, delegated to the states the responsibility of administering the Act's programs and of establishing a means of review of decisions concerning the denial or calculation of benefits. The relevant statutory provisions and regulations indicate that Congress did not intend to create a federal cause of action under 42 U.S.C. § 602(g)(2) or § 1087uu, but rather intended that alleged errors in the award of benefits be addressed through the establishment of state review procedures and remedies.

The third factor concerns whether implying a remedy for the plaintiffs would be consistent with the underlying purpose of the legislative scheme. Here, the legislative scheme features delegating the primary responsibility for the administration of the benefits program to the states, with limited federal involvement. Requiring aid recipients to litigate disputes in the review system established by the state is consistent with this legislative scheme. The court concludes that implying a private right of action in federal court would be inconsistent with the legislative framework enacted by Congress.

The fourth factor is not applicable here because the plaintiffs' complaint involves the enforcement of a federal law.

The present case is similar in many respects to the statutory scheme which was before the Sixth Circuit in *Cabinet For Human Resources, supra*. In that case, the court addressed the issue of whether the Low Income Home Energy Assistance Act of 1981, 42 U.S.C. §§ 8621–8629, implied a private action to contest the methods by which the state agency calculated an eligible household's energy subsidy level. The Act contained a provision stating that subsidies received through the grant program should not be considered income or resources of the recipient for any purpose under state or federal law. 42 U.S.C. § 8624(f)(1). The court concluded that the Energy Assistance Act afforded no original right of action. 954 F.2d at 1183. The court noted that the Act placed the responsibility for the administration of the program almost entirely in the hands of the state. *Id.* at 1182. The court further found that the existence of extensive state administrative remedies weighed against private enforcement, at least until the avenues of administrative relief provided by the state had been exhausted. *Id.* at 1182–1183. The court further stated, *Id.* at 1183:

> The substance of the complaint in this case requires review of the actual calculations made by the agency administering the energy subsidy program. Although the amounts at issue cumulatively may be great, by asking us to imply a right of action, the claimants are asking us to confirm the right of individuals who may benefit under the Act to file claims in federal court for disputes over very small amounts arrived at through detailed, highly localized procedures. We find no strong federal interest in what amounts to adjudicating monthly energy bills. We can think of no welfare benefits program where beneficiaries can sue directly in federal court without first engaging the administrative process. If we are to consider claims under the Act at all, we hesitate to do so without the benefit of an administrative record. . . . [W]e find the argument that Congress intended to create only a limited avenue for relief more persuasive than the assertion that claimants should be able to bring highly localized disputes over small sums into federal court.

The instant case involves the payment of benefits under a program which features an extensive state administrative system with little federal involvement, and remedial administrative procedures. Although the combined claims of all recipients of any kind of federally funded benefit whose benefits have

been reduced in violation of § 1087uu might possibly involve a large monetary amount, the plaintiffs' own claims concern transportation allowances involving relatively small amounts. Plaintiff Dorsey alleges that she has been denied benefits in the amount of $120 per month, and plaintiff Webb alleges that he is entitled to $106.30 more per month in transportation benefits. Although plaintiffs here purport to attack defendant's general policy regarding the application of § 1087uu, cases such as this are likely to include other issues concerning the calculation of a recipient's transportation allowance, such as disputes over the amount actually spent by the recipient for transportation or the amount which is actually "necessary" to enable the recipient to participate in other programs. Thus, complaints filed by individuals seeking to enforce the proper application of § 1087uu in their cases would likely require the district courts to adjudicate other issues concerning transportation allowances analogous to the adjudication of monthly energy bills referred to *Id.* in *Cabinet For Human Resources.* The complaint contains no allegations that plaintiff Webb has utilized the state remedial administrative processes. Plaintiff Dorsey alleges that she filed a complaint which was brought before a hearing officer, and that she pursued an administrative appeal. However, there are no allegations that she then pursued a further appeal to the court of common pleas. She argues that she should now be free to file an action in the forum of her choice. However, recognizing an individual right of action in federal court would be inconsistent with Congress's delegation of the responsibility to the states to furnish a system of review of administrative decisions.

Here, the same statute and regulations which contain the procedures for administrative review by ODHS also authorize an appeal to the court of common pleas as a part of the remedial review process. Ohio Revised Code § 5101.35(E); Ohio Admin.Code § 5101:6–9–01. Section 2506.04 grants the common pleas court the authority to decide constitutional issues and to determine whether the administrative decision is illegal or arbitrary. The court is also empowered under § 2506.04 to reverse or vacate the admin-

istrative decision and to remand the case to the agency with instructions to enter an order consistent with the opinion of the common pleas court. These remedial procedures offer a forum in which benefits recipients may obtain complete relief.

Plaintiffs have requested declaratory and injunctive relief ordering the defendant to adhere to the requirements of § 1087uu as a matter of general policy. However, this does not mandate that plaintiffs be afforded a federal right of action. As the Sixth Circuit noted in *Cabinet For Human Resources,* 954 F.2d at 1187, in denying a motion for rehearing:

> We agree that a distinction can be made between suing for declaratory or injunctive relief and suing for damages, but there is no indication that Congress intended to make such a distinction here. Moreover, it would not be difficult for an individual to transform a personal grievance into a systemic claim. There is no reason why a systemwide challenge cannot be made by an individual through an administrative action.

Requiring benefits recipients to utilize the state procedures for resolution of disputes is also indicated in this case since Congress must have recognized that complaints about compliance with § 1087uu would frequently be combined with other disputes concerning eligibility for or calculation of benefits, such as the discretionary determination under § 602(g)(2) of the amount of necessary transportation benefits. ODHS is better equipped to review the factual findings and legal conclusions of the local CDHS's, and the state common pleas court has a greater degree of familiarity with and expertise in Ohio administrative law and the review of the decisions of Ohio administrative agencies.

After considering all of the *Cort v. Ash* factors, this court concludes that Congress did not intend to authorize a private right of action to enforce § 1087uu or to enjoin the failure to apply § 1087uu in determining benefits under § 602(g)(2). Defendant's motion to dismiss the second claim in the complaint is well taken.

The final issue before the court, which the court raises *sua sponte*, is whether this court has jurisdiction over plaintiffs' claims under 42 U.S.C. § 1983. Plaintiffs assert that defendant has subjected them to a deprivation of rights, privileges or immunities granted them by federal law. This deprivation of rights stems from defendant's alleged failure to adhere to the dictates of § 1087uu in calculating their transportation allowances.

Section 1983 does not grant any substantive rights, but rather authorizes a cause of action for violations of substantive rights guaranteed by other acts of Congress. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Violations of rights secured by federal statutory law may be subject to redress under § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The exceptions to this rule are where Congress has foreclosed private enforcement in the enactment of the statute itself, or where the statute does not create substantive enforceable rights. *Wright v. Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

Congress forecloses private enforcement under § 1983 if the statute at issue creates a comprehensive enforcement scheme. *National Sea Clammers*, 453 U.S. at 20–21, 101 S.Ct. at 2626–27. The remedial scheme must be "sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy under § 1983." *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 522, 110 S.Ct. 2510, 2524, 110 L.Ed.2d 455 (1990). Courts have noted that the inquiry as to whether a statute creates substantive enforceable rights is analogous to the analysis under *Cort v. Ash* for determining the existence of an implied cause of action. *See, Cabinet For Human Resources*, 954 F.2d at 1184.

As noted above, extensive state administrative procedures are in place for the adjudication of disputes regarding benefits under § 602(g)(2). Section 602(a)(4) mandates that a state's plan for administration of the payment of benefits include a remedial system of review. The legislative scheme also provides for oversight of the state's overall administration of it's benefit plan by the Secretary of HHS. While the Secretary has little involvement in the daily administration of the benefits program, his oversight functions, which ·include approval of state plans, review of periodic reports, establishment of a quality control system to review case samplings, suspension of payments in the event of failure to comply with federal requirements, and the ability to notify states in the event that a plan provision is inconsistent with federal law, are significant in terms of ensuring compliance with § 1087uu. The court concludes that the overall administrative remedial and review scheme at issue here is sufficiently comprehensive to support a finding that Congress intended to foreclose private enforcement of § 1087uu, as applied to § 602(g)(2), under § 1983, or at the very least, that Congress intended for aid recipients to exhaust the remedial scheme offered by the state before pursuing any federal judicial remedies. The Sixth Circuit in *Cabinet For Human Resources*, 954 F.2d at 1184, 1187 reached this conclusion in regard to the similar statutory scheme involved in that case.

The legislative scheme also supports the conclusion that in enacting § 1087uu, Congress did not intend to create substantive rights which would be enforceable in a § 1983 action. Section 1087uu does not itself grant any benefits. That section only operates as a directive to federal, state or local agencies which distribute federally funded benefits on how to calculate the amount of those benefits. The legislative provisions contained in 42 U.S.C. § 601, *et seq,* were enacted to provide funding to the states, which in turn administer the benefits programs, and the aid recipients are indirect beneficiaries of this federal funding. *See Cabinet For Human Resources*, 954 F.2d at 1184 (citing *Hunt v. Robeson County Dep't of Social Services*, 816 F.2d 150, 153 (4th Cir. 1987)). Further, recognizing a federal right to enforce the provisions of § 1087uu would potentially interfere with Congress's grant of

discretionary authority to the states under § 602(g)(2) to determine whether transportation benefits are necessary, and would be inconsistent with Congress's delegation of individual dispute resolution to the states. In addition, even if this court is incorrect in its conclusion that the administrative remedial scheme applicable here is sufficiently extensive to find that Congress meant to foreclose remedies under § 1983, this court may still consider this scheme as support for a finding that Congress, in enacting § 1087uu, did not intend to create federal rights enforceable under § 1983. *Suter*, 503 U.S. at 360–361, 112 S.Ct. at 1368–69. Here, the relevant administrative remedial and enforcement mechanisms "show that the absence of a remedy to private plaintiffs under § 1983 does not make" § 1087uu "a dead letter." *Id.*

This court concludes that § 1087uu does not confer substantive rights upon the plaintiffs which would provide a basis for private enforcement under § 1983. Since § 1087uu does not create a federally enforceable right under § 1983, plaintiffs' first claim must be dismissed. *See Cabinet for Human Resources,* 954 F.2d at 1186 (reversing the district court's judgment finding original federal jurisdiction to order relief against the state).

For the foregoing reasons, Branch V of defendant's motion to dismiss is granted, and Branches II, III, and IV are denied. Plaintiffs' complaint is dismissed in it's entirety for failure to state a claim for which relief may be granted and for lack of original federal jurisdiction. Plaintiffs' motion to certify this action as a class action is denied as moot.

For the reasons stated, plaintiffs' complaint must be dismissed. However, defendant's position here, conceding that his hearing officers made decisions which were erroneous under state and federal law yet suggesting that plaintiffs are basically out of luck in terms of obtaining the benefits to which they are entitled, is not one likely to garner sympathy from any court. Since defendant contends that ODHS regulations are consistent with § 1087uu, and that it is ODHS policy to comply with that section, this would seem to be a case where cooperation on the part of the defendant, negotia-

tions between the parties and the training of local agency personnel and state hearing officers concerning the appropriate standards to be applied would be more productive than engaging in costly and time-consuming litigation. This court encourages the parties to engage in settlement negotiations and to make every effort to arrive at an equitable solution to this case.

It is so ORDERED.